[Civ. No. 14526. Second Dist., Div. One. Nov. 17, 1944.]

B. P. SCHULBERG PRODUCTIONS, LTD. (a Corporation), Appellant, v. CALIFORNIA EMPLOYMENT COMMISSION et al., Respondents.

Lloyd G. Rainey and Paul C. Jones for Appellant.

Robert W. Kenny, Attorney General, and Clarence A. Linn and Doris H. Maier, Deputies Attorney General, for Respondents.

WHITE, J.—This appeal comes before us on the judgment roll alone and was taken from a judgment discharging an alternative writ of mandate and denying a peremptory writ. By the writ in question, petitioner and appellant herein sought to review a decision of the California Employment Commission (predecessor of the California Employment Stabilization Commission), holding certain motion picture artists to be in the "employment" of petitioner and appellant and that the latter was therefore not entitled to refund of contributions it made for the year 1938 pursuant to the Unemployment Insurance Act (chap. 352, Stats. 1935, as amended; Deering's Gen. Laws, Act 8780d.)

For purposes of convenience, petitioner and appellant, B. P. Schulberg Productions, Ltd., will hereinafter be referred to as "appellant," while the defendants and respondents, California Employment Commission, will be designated as "respondent."

As the present appeal is upon the judgment roll alone, this court is confined to the consideration of the question of whether the judgment is supported by the findings, and whether upon the findings made another and different judgment should have been entered (*Goldberg* v. *List,* 11 Cal.2d 389 [79 P.2d 1087, 116 A.L.R. 900]; *Merron* v. *Title Guarantee & Trust Co.,* 45 Cal.App.2d 60 [113 P.2d 481]). In other words, we are restricted to a consideration of whether reversible error appears upon the face of such record.

Reference to the judgment roll indicates that the facts, as disclosed therein, are not in dispute. Appellant's business was that of engaging artists under contract to it and then selling the services of such artists to producing motion picture studios. The artists who were under contract to appellant during the year 1937 and whose status is in question for the period of time during which their services were leased or loaned to other companies by appellant were Edward Arnold, LaVerne W. Brown and Leon Shamroy. Under the terms of their contracts with appellant, these artists were paid a stipulated wage per week regardless of whether or not they were

actively performing services for appellant during such week or were loaned to other companies. Whenever the services of an artist under contract to appellant were loaned to another company, appellant received from such producing studio for whom the artist was working an agreed amount of money and the artist received nothing from such producing company for the services he was giving to it. At no time did the artists contract with the producing companies who borrowed their services from and paid appellant therefor. The only remuneration received by the artist was that paid him by appellant pursuant to the terms of its contract with such artist. All negotiations for the use of the services of the artist by the borrowing companies were carried on by appellant with such borrowing companies. Under its contract with the artists, appellant had the right to and did instruct the former when to start performing services for the borrowing companies and when such services should terminate. While performing services for a borrowing company, the artists were subject to the immediate control of the directors who were casting the picture for such borrowing company. It is conceded by appellant that during the times in which the artists were not loaned to other companies they were in the ''employment'' of appellant.

Therefore, the sole question presented is one of law and may be epitomized by saying that appellant was liable for the contributions it made for the year 1938 under the Unemployment Insurance Act only if the above mentioned artists were its employees during the various periods of the year 1937 when they rendered services to the various motion picture studios at the direction of appellant and pursuant to their contract with it. Otherwise, the fact would be that appellant had less than four individuals in its employ for some portion of a day in each of twenty different weeks during the calendar year 1937 and would not, therefore, meet the requirements of section 9(a) of the statute so as to qualify appellant as an ''employer'' under the Unemployment Insurance Act for the year 1938. If the aforesaid artists can be said to have been in the ''employment'' of appellant during the periods when they rendered services to other motion picture studios under the aforesaid agreements between appellant and such other borrowing companies, then the judgment appealed from must be affirmed. If, on the other hand, the decision of respondent commission that during such periods the artists were

in the "employment" of appellant was unreasonable, arbitrary, or against the vested rights of appellant under the law, and therefore against the law itself, the judgment must be reversed.

The provisions of the California Unemployment Insurance Act which are pertinent and relevant to a determination of the question confronting us read, in part, as follows:

" 'Employment,' subject to the other provisions of this act, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied. . . ." (§ 6.5.)

" 'Employer' means:

"(a) Any employing unit, which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, has within the current calendar year or had within the preceding calendar year in employment four or more individuals, irrespective of whether the same individuals are or were employed in each such day; provided, that prior to January 1, 1938, employer means any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, has within the current calendar year or had within the preceding calendar year in employment eight or more individuals, irrespective of whether the same individuals are or were employed in each such day; . . . ." (§ 9)

The social policy of the state is declared in the California Unemployment Insurance Act adopted in 1935 and wherein after reciting the existence in California of a large number of unemployed people, it is declared that such a condition is detrimental to the interests of the people of the state as a whole, and that, "to meet in some measure the situation thus shown to be created by excessive unemployment, this act is designed to accumulate a reserve to assist in protecting the public against the social effects of unemployment which may be created in future years." In consonance with the express declaration of the social policy and to effectuate the same, the Legislature, through the statute here in question, provided for the imposition of compulsory contributions upon workers and employers to establish a fund from which benefits could be paid to persons unemployed through no fault of their own.

That the Legislature did not intend to incorporate in this measure the common law concept of master and servant or the

definitions of "employment," "service," "employee" and "wages" as contained in the Labor Code and the Workmen's Compensation Act is evidenced by the fact that the statute itself contains definitions of the words "employment" and "employer," both of which definitions are hereinbefore set forth. ██ When the meaning to be given to particular terms is prescribed by the Legislature in enacting a statute, that meaning is binding upon the courts (*In re Monrovia Evening Post*, 199 Cal. 263, 270 [248 P. 1017]; *Rideaux* v. *Torgrimson*, 12 Cal.2d 633, 637 [86 P.2d 826]). We must not, therefore, use the words defined in the statute according to their rigid, precise or dictionary meanings, but rather as defined by the act itself, which evidences a legislative intent to give the words a broad and liberal description to the end that the far-reaching and evil effects of excessive unemployment may be eradicated. The broad language of the definitions contained in the statute leaves no doubt that the application of the act is to be broadly determined rather than by any narrow, technical, or even previously established legal definitions or descriptions.

██ With the foregoing rules in mind, we proceed to a determination of what is meant by the terms "employment" and "employer" as used in the statute. The first of these terms is declared to mean "service, . . . performed for wages or under any contract of hire, written or oral, express or implied." That there was a contract of employment between the artists and appellant admits of no question; that the artists received their wages from appellant is equally and as firmly established. The artists received no salary whatever from the producing companies to whom the formers' services were loaned, but, whether or not the artists worked for appellant or were loaned to other companies, they did receive, in accordance with their contracts, a stipulated weekly wage from appellant. There was no contractual relation between the artists and the companies which borrowed their services from appellant. It was appellant who instructed the artists when they were to start performing services for the borrowing companies, where they were to perform such services, for whom they were to perform the services, and when these services were to terminate. The only contract of employment entered into by the artists was with appellant, and the conclusion seems inevitable that when performing services for the borrowing companies they were merely carrying out the

terms and obligations of their contract of employment with appellant. Although the artists rendered services to the borrowing companies, the latter paid appellant and the amount of such payment was without the knowledge of, and of no concern to, the artists who were paid a weekly wage under their contract with appellant. Insofar as control of the artists while working for the borrowing companies is concerned, the question for determination in the case at bar is not who had control of the particular employees at a given time, but in whose "employment" such individuals were. Since the artists' only contract of "employment" was with appellant, appellant fixed and paid their salaries, had the right to discharge them or direct them for whom and when to work, we are persuaded that, under the broad and general meaning ascribed by the Legislature in the statute to the term "employment" and to kindred and related terms and bearing in mind the evils which the statute was designed to cure, but one construction can be placed upon the facts reflected by the judgment roll in the instant case, and that is, as held by the trial court, that the artists around whose status this litigation centers were in the "employment" of appellant during the year 1937, by reason of which appellant was an "employer" within the meaning of section 9(a) of the California Unemployment Insurance Act during the year 1938 and therefore liable for contributions under the act on wages paid to its workers.

The foregoing conclusion at which we have arrived makes it unnecessary to discuss or decide the contention made by respondent that a writ of mandate is not the proper remedy in the present proceeding.

For the reasons herein stated, the judgment from which this appeal was taken is affirmed.

York, P. J., and Doran, J., concurred.