[No. B022184. Second Dist., Div. Seven. Sept. 15, 1987.]

JACK FARENBAUGH & SON, Plaintiff and Respondent, v. BELMONT CONSTRUCTION, INC., et al., Defendants and Appellants.

1024

---

## COUNSEL

Bidna & Keys and Richard D. Keys for Defendants and Appellants.

Schneider & Wallerstein and Larry I. Wallerstein for Plaintiff and Respondent.

---

## OPINION

**ROBERSON, J.***—Appellant Neal B. West appeals from an order of the trial court granting plaintiff/respondent's motion to amend a judgment obtained by respondent against a corporate defendant (Belmont Construction, Inc.) to include appellant who was not named in the original complaint nor in the original judgment as a judgment debtor based on an alter ego theory.

Appellant's principal contention is that he was deprived of his due process rights and that the trial court abused its discretion in that: (1) there was no evidence that appellant controlled the litigation on behalf of the corporate defendant in the case in which the judgment was given and (2) there was no showing that appellant was the alter ego of the corporate defendant. Appellant further contends that the trial court abused its discretion in refusing to disqualify itself from hearing the motion to amend the judgment.

I

FACTS

In March 1978, plaintiff/respondent Jack Farenbaugh & Son entered into a written contract with Belmont Construction, Inc. (hereinafter referred to

---

* Assigned by the Chairperson of the Judicial Council.

as Belmont), a California corporation, for grading on a parcel of property on which Belmont was building. A dispute arose between respondent and Belmont concerning, among other things, payment for additional equipment rented by respondent in order to complete its grading work. Because the dispute could not be resolved, respondent stopped work on the project prior to completion of its work, and filed a lawsuit to recover the contract amount along with other claimed costs.

The case was tried as a court trial on January 31, 1983. The court found in favor of respondent against Belmont and on April 13, 1983, judgment was entered in favor of respondent against Belmont, in the amount of $15,069.33, plus interest, together with costs, disbursements and for attorneys fees in the amount of $9,787. After discovering that defendant corporation had no income since approximately sometime in 1980, that it had no assets, and that appellant was engaged in the construction business using the name BCI (which are the same initials as defendant corporation's, i.e. Belmont Construction, Inc.) respondent brought a motion to amend the judgment to name appellant, who was not a party to the original action, as an additional judgment debtor on the ground that appellant was the alter ego of Belmont, and that the judgment as rendered contained a misnomer in failing to include the name of appellant as judgment debtor.

On March 2, 1984, respondent's motion was heard without opposition, and was granted by the trial court.

Thereafter, on or about January 1986, appellant caused to be filed a motion to vacate and set aside the amended judgment against him. The court granted appellant's motion to vacate and set aside the amended judgment by default. On or about February 7, 1986, respondent once again brought a motion to amend judgment to add appellant and the matter was set for hearing on March 7, 1986.

Sometime prior to the March 7th hearing, counsel for respondent received a telephone call from an attorney who identified himself as the attorney for appellant and indicated that appellant had not been properly served with respondent's motion; he then inquired as to whether respondent intended to go forward with the March 7th hearing. He was informed by respondent's attorney that he did intend to proceed with the hearing. On March 7, 1986, appellant's attorney appeared in court initially as a special appearance; however, when appellant's counsel agreed to accept personal

service in open court on behalf of appellant the court granted his request for a continuance of the hearing on the motion to amend judgment to April 4, 1986, and without objection from counsel transferred it back to the trial court for the hearing.

Directly after the hearing, counsel for respondent advised appellant's counsel that he intended to pursue collection of the judgment against both appellant and Belmont and that he would not agree to any continuance of the April 4 hearing date. He also suggested to appellant's counsel that if he intended to have an evidentiary hearing with witnesses he should notice same and that he would not waive any objections thereto. No opposing papers to respondent's motion were filed by appellant nor was there any notification of an intention to take oral testimony at the time of the hearing.

On April 4, 1986, no opposition to respondent's motion having been filed, the trial court granted respondent's motion adding appellant to the judgment as a judgment debtor[1] and caused its order thereon to be entered on April 9, 1986.

On April 14, 1986, appellant filed a motion for reconsideration (alternately as a motion for relief from default). Thereafter, appellant's motion for reconsideration was granted; and on June 20, 1986, after hearing argument from both sides and considering the moving and opposition papers the court ruled that the order entered April 9, 1986, granting respondent's motion to amend judgment and the order amending the judgment, remain in full force and effect.

## II

### THE COURT'S AUTHORITY TO AMEND JUDGMENT TO INCLUDE AN INDIVIDUAL NOT NAMED IN THE ACTION AS A JUDGMENT DEBTOR

■ Section 187 of the California Code of Civil Procedure[2] grants to every court power to use all means to carry its jurisdiction into effect, even

---

[1] Although both appellant and his counsel were present at the April 4 hearing, no written opposition to respondent's motion had been filed, nor was any presented at the hearing. Further no objection to the trial judge's hearing of the motion was made until the date of that hearing and after he had indicated a tentative ruling (no written objection was ever filed).

[2] Section 187 of the Code of Civil Procedure provides: "When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if

if those means are not specifically pointed out in the code. (*Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 120 [54 Cal.Rptr. 721].) ▉ It is now settled that ". . . the authority of the court will be exercised to impose liability under a judgment upon the *alter ego* who has had control of the litigation." (*Schoenberg* v. *Romike Properties* (1967) 251 Cal.App.2d 154, 168 [59 Cal.Rptr. 359]; *Alexander* v. *Abbey of the Chimes* (1980) 104 Cal.App.3d 39 [163 Cal.Rptr. 377].)

▉ In contending that the ". . . trial court abused its discretion in applying the remedy of post judgment motion," in joining appellant as a judgment debtor, appellant does not urge that the court lacks authority to amend judgment after trial to add one not originally a party to the action as a judgment debtor, or that the procedural methodology by which appellant was added to the judgment was not proper, but rather, the thrust of appellant's contention is that the evidence heard by the court was insufficient to support the court's ruling.

Appellant first contends that he was deprived of his due process rights in that there was no showing that appellant in any way controlled the original litigation. We disagree. ▉ In reaching its decision the court was not limited to evidence testified to at the trial. In other words, although no testimony may have been offered in the original action for the purpose of establishing a relationship between defendant corporation (Belmont), and an individual sought to be charged with the liability of the corporation as the alter ego, a court may, on the hearing of a motion to amend judgment, admit extrinsic evidence, on proper notice to the adversary party, to make the judgment speak the truth. (*Thomson* v. *L.C. Roney & Co.* (1952) 112 Cal.App.2d 420, 427 [246 P.2d 1017]; *Scamman* v. *Bonslett* (1897) 118 Cal. 93, 97 [50 P. 272].)

It is now settled that ". . . the authority of the court will be exercised to impose liability under a judgment upon the *alter ego* who has had control of the litigation." (*Schoenberg* v. *Romike Properties, supra,* 251 Cal.App.2d 154, 168; *Alexander* v. *Abbey of the Chimes, supra,* 104 Cal.App.3d 39.) ▉ In the instant case, there was sufficient evidence that appellant had controlled the litigation between respondents and Belmont. Once the trial court was satisfied that there was substantial evidence to that effect and

---

the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

that appellant acted as alter ego of Belmont, it was empowered to amend the judgment to add appellant as a judgment debtor.

A. Appellant's control of the litigation:

Appellant contends that his declaration states that he was not in control of the litigation and that the only reference to control of the litigation by appellant in respondent's moving papers are respondent's unsupported statement that appellant was. The court had before it the declaration of respondent's attorney in which he stated that he was the attorney in charge of litigation since September 4, 1981, for the plaintiff in the action against Belmont, that he personally did the judgment debtor examination of appellant, that he personally tried the lawsuit against Belmont, that he personally took the deposition of appellant on January 29, 1982, at which time appellant testified that his occupation was that of president of the defendant corporation and that appellant also testified at the trial that he was president of the defendant corporation. While it is true that respondent's attorney was stating his conclusion, or opinion if you will, that appellant "controlled the litigation," in the original action, that conclusion was based on his personal observations during his handling of the plaintiff's case, which were further corroborated by the trial judge's own personal observations made by the court during the trial. At the hearing on appellant's motion for reconsideration, the court stated: ". . . we have a rather unusual situation here; it is not the norm, in that this court personally tried the original case. And this court had Mr. West as well as . . . Mr. Hafer[3] before it. And this court had an opportunity to see how the trial was conducted." The court later stated: "Now, I do not mean to suggest that the court is deciding this motion or that this court decided the original motion based upon the court's recollection.

"But all that I am saying is, it is a situation in which the presentation made by Mr. Wallerstein[4] strikes certain responsive cords with the court based upon the fact that the court 'vas' dere, Chaaley' and actually heard and observed witnesses and saw what went on.

". . . . . . . . . . . . . . . . . . .

". . . when you say Mr. West was not a party to the original trial, Mr. West figured very, very prominently in the original trial. Mr. West was

---

[3] Hafer was the attorney for Belmont at the trial.

[4] Wallerstein was plaintiff's attorney at the trial and the declarant in respondent's moving and opposition papers herein.

here. Mr. West testified. Mr. West was cross-examined. Mr. West counseled with Mr. Hafer in the court's presence.

"And Mr. West was not a passive participant by any manner of means in that original trial."

In addition to the trial court's personal observations, appellant in his sworn declaration indicates, "Mr. Hafer refused to call Mr. Willis as a witness, despite my objections. I wanted Mr. Willis on the stand, and Mr. Hafer said no." As aptly pointed out by the trial court, this would tend to suggest that appellant (who was the president and at least 50 percent shareholder in the defendant corporation) did control the litigation and that he was giving instructions to his attorney as to what he wanted done.

It obviously was apparent to both the respondent's attorney and to the judge hearing the case, that appellant was controlling the litigation. Respondent's attorney's statements in his declarations rang true to the trial court, who used its own recollection of appellant's conduct at the trial.

We are satisfied that appellant's involvement at trial satisfies the elements of fair trial as required by due process. We therefore hold that this was a proper case for amendment of the judgment.

III

DISQUALIFICATION OF THE JUDGE

Appellant next contends that the judge committed error in refusing to disqualify himself. In support of this position appellant contends that the court admitted that in making its ruling that appellant controlled the litigation the court was relying solely on its own vague recollections of events that had occurred four years prior to the motion. This is incorrect; the court specifically indicated that it was not deciding the motion before it (nor had it in the original motion) based upon its recollection. Expressions of opinion uttered by a judge, in what he conceived to be a discharge of his official duties, are not evidence of bias or prejudice. (*Estate of Friedman* (1915) 171 Cal. 431, 440 [153 P. 918].) "[W]hen the state of mind of the trial judge appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant which

disqualifies him in the trial of the action. It is his duty to consider and pass upon the evidence produced before him, and when the evidence is in conflict, to resolve that conflict in favor of the party whose evidence outweighs that of the opposing party. The opinion thus formed, being the result of a judicial hearing, does not amount to that bias and prejudice contemplated by section 170, subdivision 5, of the Code of Civil Procedure as a basis for a change of venue or a change of judges."[5] (*Kreling* v. *Superior Court* (1944) 25 Cal.2d 305, 312 [153 P.2d 734].) Appellant was well aware of the fact that the judge to whom the motion was assigned for hearing was the same judge who tried the original action and who ruled on the prior motion, and yet no objection was made by appellant (either written or oral) to the assignment. It was not until the hearing was under way and the judge expressed his recollection of appellant's conduct at the trial that appellant urged that the judge should be disqualified from hearing the motion. We hold that appellant's contention is without merit.

## IV

### ALTER EGO LIABILITY:

 Finally, appellant contends that the trial court abused its discretion in finding alter ego liability. He argues that there was insufficient evidence to establish alter ego liability.

 Generally speaking, there are two requirements for disregarding the corporate entity: ". . . (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." (*Automotriz etc. De California* v. *Resnick* (1957) 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042].) Since the determination as to whether or not these requirements have been established by the evidence is primarily one for the trial court and is not a question of law, the conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence. (*Arnold* v. *Browne* (1972) 27 Cal.App.3d 386, 394 [103 Cal.Rptr. 775], overruled on other

---

[5] Former section 170, subdivision (a) (5) read as follows: "(a) No justice or judge shall sit or act as such in any action or proceeding: . . . [¶] (5) When it is made to appear probable that, by reason of bias or prejudice of such justice or judge a fair and impartial trial cannot be had before him." Former section 170 was repealed in 1984. However, the principle enunciated in *Kreling* v. *Superior Court, supra,* 25 Cal.2d 305 remains the same and is equally applicable to appellant's claim of disqualification under Code of Civil Procedure section 170.1, subdivision (a)(1).

grounds in *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83].)

██ The conditions under which the corporate entity may be disregarded vary according to the circumstances in each case and the matter is particularly within the province of the trial court. (*Associated Vendors, Inc.* v. *Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 836-837 [26 Cal.Rptr. 806].) ██ The evidence presented to the court below through deposition testimony of appellant, and by way of declarations of both appellant and the attorney for respondent, provided sufficient evidence from which the trial court could reasonably conclude that there was substantial evidence of alter ego liability.

Appellant in his declaration for the hearing in the court below indicated that in 1980 he and Hafer (the other 50 percent shareholder) decided to go their separate ways. When Belmont went out of business appellant and Hafer took whatever assets were available and used them to "pay outstanding debts."

On January 29, 1982, appellant's deposition was taken by respondent's attorney. At the deposition when asked whether he was currently employed, he stated that he was, and that his capacity was that of president[6] of Belmont. Later, in May of 1983, respondent's attorney conducted a creditor's examination of Belmont and appellant appeared as president of that corporation. The examination of appellant disclosed that as of May 20, 1983, Belmont had no money and had not done business within the previous two to five years, that the corporation had no bank accounts, no equipment or even small tools, and that the last monies Belmont received was in 1980, or prior thereto.

On September 26, 1983, respondent's attorney received a corporate information report regarding the corporate status of Belmont, showing that the corporation was suspended by the Secretary of the State of California on November 15, *1982*. On the same date as receiving this information, respondent's counsel also received a document from the California Department of Consumer Affairs certifying that appellant, doing business as "Belmont

---

[6]In the January 1982 deposition (which was prior to the trial of the action), when asked about his current employment, appellant testified that he was president of "Belmont Construction, Inc.," and although appellant appeared with counsel at the deposition, no correction was ever made to his answer to the question.

Construction Company, a sole proprietorship", held a contractors license from September 13, 1972, which expired on June 30, 1975. On May 18, 1981,[7] appellant had his license reissued changing the name of his business, "Belmont Construction Company," to "BCI" on that date. In addition, both appellant's sole proprietorship and Belmont (defendant corporation) shared the same mailing addresses: "P.O. Box 2226, Huntington Beach, California, 92647."

Both before deposition and prior to trial, the attorney for respondent addressed his documentation to appellant as "president of Belmont Construction, Inc." and neither he nor his attorney ever corrected such designation. Further, at the time of trial appellant testified that he was president of Belmont Construction, Inc.

By appellant's causing Belmont to go out of business and disbursing all of its monies and other assets to pay others, not including respondent, Belmont was left as a hollow shell without means to satisfy its existing and potential creditors; when viewed with the other evidence presented, the evidence was more than sufficient for the trier of fact to find both unity of interest and ownership as well as an inequitable result if the alter ego doctrine were not applied.

Appellant raises a number of other issues including his objections to certain of the contents of respondent's declarations. But we note that appellant has adopted most of the relevant matters objected to by his own declaration, and the remaining issues we do not find relevant to the resolution of this appeal.

The order is affirmed.

Lillie, P. J., and Thompson, J., concurred.

---

[7]The reissuance of a license to appellant was six years and approximately five months after the expiration of Belmont's (the corporate defendant) license.

The name Belmont Construction Company (the sole proprietorship), was changed by appellant to BCI, the initials of the defendant corporation (Belmont Construction, Inc.) in May 1981, after the expiration of corporate defendant's general contractor's license, and approximately two months after appellant disassociated himself from the corporation.