In re Thomas J.
HECKENKAMP, Debtor.

Luis COQ, Plaintiff,

v.

Thomas J. HECKENKAMP, Defendant.

Bankruptcy No. LA 88–21488 BR.
Adv. No. LA 89–0148 BR.

United States Bankruptcy Court,
C.D.California.

Dec. 28, 1989.

Seltzer Caplan Wilkins & McMahon, San Diego, Cal., for plaintiff.

Paul R. Witford, Beverly Hills, Cal., for defendant.

## MEMORANDUM OF OPINION RE COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

BARRY RUSSELL, Bankruptcy Judge.

This matter is before the Court on Luis Coq's (Coq) Complaint to Determine Dis-

chargeability of Debt pursuant to 11 U.S.C. § 523(a)(2)(A) as a debt for money obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

The trial was held before this Court on October 10, 1989. Coq was present in court and represented by Jeffrey L. Mason, Esq.; defendant Heckenkamp was present in court and represented by Paul R. Whitford, Esq.

## FACTS

The facts are largely undisputed. In early October, 1985, Heckenkamp represented to Coq that there were 320 new 1985 and 1986 Mercedes Benz automobiles on the dock in Amsterdam waiting to be loaded onto a boat and shipped to the United States and that the automobiles either had already been sold in the United States or could and would be sold shortly after their arrival in the United States at a profit of between $12,000 and $15,000 per vehicle. According to Coq, Heckenkamp stated that $270,000 was needed to have the automobiles loaded and shipped, and if Coq would loan the $270,000, he would get back $292,000 within two weeks.

On October 15, 1985, Coq delivered $270,000 to Heckenkamp. At the same time, Heckenkamp gave Coq a check payable on an account of Patco International, S.A., a Panamanian corporation, signed by Heckenkamp, dated October 28, 1985, payable to Coq or his order in the sum of $292,000 (the check). After October 28, 1985, Coq presented the check for payment, but it was not paid; rather, the check was returned for insufficient funds.

Heckenkamp admitted that the Patco account upon which the check was drawn was at all times under his control, and there was never more than $20,000 in the account. Heckenkamp further admitted that ten percent of the sum delivered by Coq ($27,000) was paid to Mr. John Engstrom for bringing Coq (and his money) to Heckenkamp, but Heckenkamp never disclosed to Coq that any portion of the money was to be paid to Engstrom. According to

Heckenkamp, he spent the remaining $243,000 to travel to Germany, Switzerland, London, and Hong Kong to try to obtain a letter of credit for $14 million to purchase the Mercedes Benz automobiles. No part of the $270,000 which Coq delivered to Heckenkamp was ever paid to purchase the Mercedes Benz automobiles or to get them loaded onto a boat or boats or shipped to the U.S. No portion of the $270,000 has been repaid to Coq.

## DISCUSSION

The evidence is overwhelming that Heckenkamp obtained the $270,000 from Coq by false pretenses, false representations, and actual fraud.

Heckenkamp told Coq that he or Patco had 320 new Mercedes Benz automobiles on the dock in Amsterdam waiting to be shipped to the United States, and all Heckenkamp needed was $270,000 to have the boats loaded and shipped. Clearly, that was not true. He did not tell Coq that $27,000 of the $270,000 would be used to pay John Engstrom for delivering Coq and his money to Heckenkamp. He told Coq that he (i.e., Coq) would have no risk, and he would have his money back within two weeks. That was also clearly false. He gave Coq a check for $292,000 drawn on an account controlled by Heckenkamp which never had more then $20,000 in it. He has no records to show what he did with the $270,000.

I find to be totally without merit, Heckenkamp's claim that Patco, the Panamanian corporation, owes Coq the money but that he, Heckenkamp, has no personal liability to Coq because he (Heckenkamp) was merely acting as Patco's agent throughout the transaction. It also appears that Patco is a sham corporation which Heckenkamp used to shield himself from personal liability. Whether that is the case or not, however, Heckenkamp is personally liable to Coq because an agent is liable for his own fraud.

Therefore, I find that Heckenkamp is liable to Coq for $270,000 plus interest at the legal rate from October 15, 1985, and

that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## TRIAL PROCEDURE

██ The Procedure used for the trial of this matter was pursuant to an "Order re Presentation of Evidence by Declaration for Court Trial" (the Order) signed by me in Court at the pretrial hearing on August 1, 1989. I fully explained the requirements of the Order to both counsel at that time and a copy of the Order was handed to both counsel by my clerk. There were no objections by either side to the use of this Procedure.

The Procedure is best described by the second introductory paragraph of the Order which provides: "The purpose of this procedure is to ensure a fair and expeditious trial. The procedure is similar to a motion for summary judgment, except that the admissibility of a declaration is dependent upon the presence of the declarant at trial subject to cross-examination."

Under this Procedure, the direct testimony of most witnesses is presented by means of declarations, otherwise admissible under the Federal Rules of Evidence. In order for a declaration to be considered by the Court, the declarant must be in court, subject to cross-examination at the trial. Naturally, if a party is unable to obtain the declaration of a witness, as in the case of an adverse witness, the direct testimony is presented in the more traditional method of presenting live testimony.

In the instant trial, only three declarations were filed: (1) Coq, (2) Heckenkamp, and (3) Coq's attorney, Jeffrey L. Mason, dealing with the authentication of a number of documents.

On the day of the trial, October 10, 1989, after both counsel stated that they were ready to proceed, Heckenkamp's counsel Paul R. Whitford for the first time objected to the use of the Declarations based upon, as he stated, "the Barns decision handed down by the Ninth Circuit recently." He was apparently referring to the decision of the Ninth Circuit Bankruptcy Appellate Panel in *Danning v. Burg, (In re Burg),*

103 B.R. 222 (9th Cir. BAP 1989) decided August 11, 1989.

The matter before me is clearly distinguishable from *Burg,* because unlike *Burg,* the record is clear that there was no *timely* objection to the Order regarding the use of the Procedure issued on August 1, 1989, over two months prior to trial. Mr. Whitford did not seem too concerned about the process in that he made no evidentiary objections to the two declarations filed.

In fact, Heckenkamp's declaration was not filed until the day of trial, obviously in violation of the prior Order. Because Coq's counsel did not object to the late filed declaration, it was considered by me in deciding the § 523 complaint at issue.

It is clear to me that absent contrary authority by my District Court, I am bound to follow the opinions of the BAP. But surely, even the Panel which decided *Burg* would have concluded, as I have that, there was no *timely* objection to the August 1, 1989 Order requiring the use of the identical Procedure which was used in *Burg.* See Fed.R.Evid. 103(1).

Because this issue may arise again, either within the Ninth Circuit, or other Circuits, I offer the following observations about the propriety of this Procedure raised by the Panel of the BAP.

Initially, the *Burg* opinion is a bit unclear as to whether the discussion of the trial procedure was mere *dicta* and really not necessary to the decision.

Under "FACTS", the *Burg* opinion begins "The *undisputed* facts are essentially as follows." (Emphasis added.) 103 B.R. at 224. After discussing the "undisputed" facts, the Panel reversed the trial court on the merits of the litigation in a discussion occupying approximately one-half page. The remaining two pages of the opinion dealt with the propriety of the method of determining the "undisputed" facts.

The Panel appeared troubled by the apparent lack of authority for the Procedure citing Fed.R.Civ.P. 43(a) as adopted by Bankruptcy Rule 9017 which provides:

Rule 43. Taking of Testimony.

(a) Form. In all trials the testimony of witnesses shall be taken in open court, unless otherwise provided by an Act of Congress or by these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court.

The obvious purpose of Rule 43(a) is to insure that the witnesses be in court subject to cross-examination as is required by the Procedure.

In fact, it appears to me that the Procedure is consistent with Rule 611 "Mode and Order of Interrogation and Presentation". Rule 611(a) provides:

(a) Control by Court. The court shall exercise reasonable control over the *mode* and order of interrogating witnesses and presenting evidence so as to (1) *make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time,* and (3) protect witnesses from harassment or undue embarrassment. (Emphasis added.)

"Mode" is defined by Webster's Dictionary as including: "a manner of doing something and performing a particular function or activity" and Black's Law Dictionary defines "Mode" as "The manner in which a thing is done; as the mode of proceeding, the mode of process."

In this Procedure, the declarations are merely the "mode" or method of presenting the direct testimony as allowed by Rule 611(a) with full rights of cross-examination to test credibility, including whether the declaration is really the statement of the declarant or merely the statement of counsel (as suggested by the Panel). To the extent that witness credibility is a factor, the opposing counsel will certainly want to bring this out by the cross-examination of the declarant-witness. Also, if the judge has a concern with credibility, the judge will examine the declarant-witness.

It should also be noted that the Panel's classification of the declarations as inadmissible hearsay is simply wrong. The declarations are no more hearsay than affidavits used in motions for summary judgment. Of course, the statements of the declarant contained within the declarations are subject to the same objections as if the declarant were testifying in court. In the matter before me, no such objections were made.

It appears that the Panel may have been confused concerning the actual operation of the Procedure. For instance, the *Burg* opinion gives one the impression that the trial was based solely on the declarations and does not discuss the availability of the right of cross-examination of the declarants.

The Procedure is not new. I got the idea from a similar procedure used by a United States District Court Judge, now sitting on the Ninth Circuit Court of Appeals. In fact, many District Judges in the Central District of California and elsewhere have used similar procedures for years.

In response to *Burg,* the District Court for the Central District of California has enacted the following local rule to state what many felt had been an accepted practice:

Rule 13.6 NON JURY TRIAL—NARRATIVE STATEMENTS

In any matter tried to the Court, including matters in Bankruptcy, the judge, including the bankruptcy judge may order that testimony on direct examination of a witness be presented by written narrative statement subject to cross-examination of the declarant at the Trial.

The Procedure has been particularly effective in busy courts where it may be difficult to get court time for trials. Using this type of Procedure, courts have been able to try matters that would normally take one to two weeks in one-half to one or two days. Since almost all direct testimony is admitted into evidence by the witnesses' declarations, the in-court time for this testimony is generally eliminated. Thus, the courts availability to resolve disputes is greatly enhanced.

Although the trial preparation by counsel is increased under this Procedure and the availability of trial tactics is reduced, certainly the ascertainment of the truth is clearly enhanced. The extra trial preparation is more than offset by the savings in

trial time. In addition, because counsel are required to fully prepare their cases *prior* to trial, the likelihood of settlement is increased. Finally, the trial court is far better able to cut through the chaff and get to the heart of the issues at trial.

Although the Panel briefly mentions concerns about "basic notions of procedural due process" it does not clarify what these concerns are. 103 B.R. at 224. The only possible "due process" concern would be the right of cross-examination which is fully protected by the Procedure.

In conclusion, the Procedure is consistent with the spirit of various Federal Rules:

1. Fed.R.Civ.P. 1 Scope of Rules concludes: "They shall be construed to secure the just, speedy and inexpensive determination of every action."

2. Bankruptcy Rule 1001 also concludes: "These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."

3. Federal Rules of Evidence—Rule 102 provides: "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

### CONCLUSION

Having concluded that the trial procedure of using the parties declarations as the means of presenting the direct testimony is proper and that the evidence is overwhelming that Heckenkamp defrauded Coq., I hold that the debt of $270,000 plus interest from October 15, 1985 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Coq is also entitled to costs in an amount to be determined upon proper application.

This memorandum of opinion shall constitute Findings of Fact and Conclusions of Law in accordance with Bankruptcy Rule 7052.

A separate order will be entered in this matter finding the debt to be nondischargeable.