**In re Charles Willett ANKENY, Debtor.**

**Charles Willett ANKENY, Appellant,**

v.

**Stephen MEYER, Appellee.**

**BAP No. NC–94–1986–OJR.**
**Bankruptcy No. 93–11832.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 23, 1995.

Decided June 20, 1995.

66

Steven M. Olson, Santa Rosa, CA, for appellant.

William J. Arnone, Jr., Santa Rosa, CA, for appellee.

Before OLLASON, JONES and RUSSELL, Bankruptcy Judges.

OLLASON, Bankruptcy Judge:

Debtor appeals the bankruptcy court's orders overruling his objection to his employee's claim for indemnification, and denying his motion for reconsideration. **We AFFIRM.**

### STATEMENT OF FACTS

Charles Ankeny ("Ankeny") was president and largest shareholder of Willett's Brewing Company ("Willett's"), a restaurant and microbrewery, in Napa, California. Stephen Meyer ("Meyer") was employed as a chief chef at Willett's.

At the time of his employment, Meyer was unaware that the restaurant's waitress and dining room manager, Jennifer Kobylka ("Kobylka"), was attempting to end a sexual relationship between herself and Ankeny. According to Meyer, there were many clashes of personality between Meyer and Kobylka before she quit within six months of Meyer's employment.

In the summer of 1992, Kobylka sued Ankeny, Willett's and Meyer, alleging sexual harassment and other claims. Meyer sought to settle with Kobylka since all of his alleged conduct was work related and Meyer did not believe his conduct constituted sexual harassment. Meyer and Kobylka settled prior to the trial; the settlement did not involve any financial payment by Meyer. Kobylka released her claims against Meyer, and he was dismissed with prejudice as a defendant. Meyer's cross-complaint was severed from the main trial. In it he sought indemnification from his employer for attorney's fees, pursuant to Cal.Labor Code § 2802. This section provides:

> An employer shall indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the

employee, at the time of obeying such directions, believed them to be unlawful.

Cal.Labor Code § 2802 (West 1995).

The jury, in its Special Verdict, found that Meyer sexually harassed Kobylka while Meyer was acting within the course and scope of his employment. It also found that Ankeny had created an offensive or hostile work environment. It found that Ankeny and/or Willett's had engaged in outrageous conduct and acted with oppression or malice. Both defendants were found to have failed to prevent or stop the sexual harassment of Kobylka, to have retaliated against her, and to have constructively terminated her without good cause. Kobylka was awarded $46,400 in economic damages and $100,000 in punitive damages against both Ankeny and Willett's.[1]

Before the court could conduct a second trial on Meyer's right to indemnification, Ankeny and Willett's filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code[2] on July 28, 1993.

Meyer filed timely proofs of claim in each case for $34,463, representing his expense for attorney's fees to defend against the Kobylka suit. Under the confirmed plan of reorganization in the Willett's case, Meyer received partial payment on his claim in the amount of $9,322.53. The balance of Meyer's claim was $25,140.47. Under the confirmed plan in the Ankeny case, Ankeny was obliged to obtain a personal loan to pay in full all allowed claims. Ankeny objected to Meyer's claim on March 4, 1994, on the grounds that he was not Meyer's employer. Meyer's response stated that Ankeny was responsible as an owner and operator of Willett's, as well as under a theory of alter ego liability.

On April 8, 1994, the bankruptcy court heard Ankeny's objection to Meyer's claim. The court issued an order on April 28, 1994, instructing the parties to file briefs and declarations. Both parties submitted briefs, declarations, and documentary evidence.

---

1. Kobylka filed a request for an award of attorney's fees in the amount of $972,810. Before the trial court heard the fees motion, Ankeny and Willett's reached an agreement to settle Kobylka's claims against them for $400,000.

2. Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All references to "rule" are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), Rules 1001–9036.

Meyer's evidence included a Letter of Intent ("agreement" or "contract") that predated Meyer's employment at Willett's. The agreement, drafted by Meyer, stated in pertinent part:

> The purpose of this letter is to summarize and document the points discussed in pre-employment interviews between Stephen Meyer and Mr. and Mrs. Ankeny d.b.a. Willett's Brewing Company. The Chef/Kitchen Manager position discussed will encompass the following areas of responsibility; however, final authority will always reside with Mr. and Mrs. Ankeny.[3]

The agreement also set forth job duties, benefits and termination provisions. It was signed by "Charles Ankeny" and "Stephen Meyer."

Meyer also filed a portion of Ankeny's deposition taken for the state court proceedings. According to this evidence, Ankeny did not recall when his wife had acquired shareholder status in Willett's; he did not recall when the corporation had held annual meetings for the years 1988 through 1991, although he stated that there was an annual meeting in October of 1992 where his wife had kept minutes.

Ankeny also filed his declaration wherein he stated that he executed the agreement in his capacity as agent for Willett's. He stated that Willett's paid Meyer's salary. In addition, all business permits and licenses for the business were in the name of Willett's Brewing Company, which kept its separate books and records, according to Ankeny. Ankeny also stated that his uncertainty concerning his wife's status in the corporation was because they had only married in 1988 and he was unfamiliar with community property law.

The bankruptcy court entered its Order Overruling Objection to Meyer's claim and Memorandum of Decision, on May 27, 1994. The bankruptcy court premised its decision on the fact that "the jury found that Ankeny and his corporation failed to take action to stop the harassment, retaliated against the waitress for complaining, and constructively terminated her without good cause." The bankruptcy court further found that "[s]ince Meyer had a contract with Ankeny personally and was working as an employee of the corporation, his claim shall be allowed as filed in both cases."

On June 6, 1994, Ankeny filed a timely motion for reconsideration, alleging that Willett's, not Ankeny, was Meyer's employer at the time of the harassment and the commencement of the Kobylka suit. Both parties submitted briefs. The bankruptcy court denied the motion on August 11, 1994.

Ankeny filed a timely notice of appeal in which he appealed both orders.[4]

## ISSUE

The sole issue on appeal is whether Ankeny was Meyer's employer for purposes of indemnification under the California labor statute.

## STANDARD OF REVIEW

Questions of contract enforcement and interpretation are subject to *de novo* review unless extrinsic evidence was admissible on issues, such as intent. *In re Estreito,* 111 B.R. 294, 295 (9th Cir. BAP 1990). Where the interpretation of a contract involves review of extrinsic evidence, we review findings of fact for clear error while reviewing *de novo* the principles of law applied to those facts. *In re Tamen,* 22 F.3d 199, 203 (9th Cir.1994).

A trial court's findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed.

3. According to Ankeny, and as listed on the Statement of Financial Affairs in the Willett's bankruptcy, Mrs. Ankeny was Secretary/Treasurer of Willett's.

4. Meyer's appeal of the underlying order was timely, and the motion for reconsideration was timely. Therefore, we consider both orders on appeal. *Compare, In re Cleanmaster Indus., Inc.,* 106 B.R. 628 (9th Cir. BAP 1989), and *In re W.F. Hurley, Inc.,* 612 F.2d 392 (8th Cir.1980), where the appellant had filed untimely motions for reconsideration, and had attempted to appeal the underlying order via appeal of the orders denying the reconsideration motion.

R.Bankr.P. 8013. *See also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985). A finding of fact is clearly erroneous if, after looking at the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, *reh'g denied*, 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (1948).

 Questions of law are reviewed *de novo*, *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 245 (9th Cir.1989). We make an independent review of the bankruptcy court's interpretation of California state law. *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir.1990). To the extent that questions of fact cannot be separated from questions of law, we review them as mixed questions of law and fact applying a *de novo* standard. *Ratanasen v. Cal. Dep't of Health Servs.*, 11 F.3d 1467, 1469 (9th Cir.1993).

 Whether the bankruptcy court erred in denying a motion for reconsideration is reviewed under the abuse of discretion standard. *In re Cleanmaster Indus., Inc.*, 106 B.R. 628, 630 (9th Cir. BAP 1989).

## DISCUSSION

The Bankruptcy Code provides that the court shall allow a claim to which an objection has been raised except to the extent that it is unenforceable against the debtor under any agreement or applicable law. § 502(b)(1).

 A duly executed proof of claim is *prima facie* evidence of the validity and amount of a claim. Fed.R.Bankr.P. 3001(f). The burden then switches to the objecting party to present evidence to overcome the *prima facie* case. *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir.1988). The ultimate burden of persuasion is on the claimant. *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991).

### (a) Standard of review

Ankeny argues on appeal that the standard of review for the order overruling the objection to the claim should be *de novo*

because the bankruptcy court took declaration evidence and treated the proceedings like one for summary judgment.

 Declaration evidence may be used in lieu of direct testimony. Fed.R.Bankr.P. 8013; *In re Adair*, 965 F.2d 777, 779 (9th Cir.1992). Declaration evidence is subject to the same in-court evidentiary objections. *Id.*; *In re Heckenkamp*, 110 B.R. 1, 4 (Bankr.C.D.Cal.1989); Fed.R.Evid. 611. Ankeny did not object to the evidence presented by Meyer or request cross-examination.

 The trial judge's ability to observe witnesses is not a necessary condition for application of the clearly erroneous rule. *In re Lenard*, 849 F.2d 974, 976–77 (5th Cir. 1988). Findings of fact shall not be set aside unless clearly erroneous, even when the court's findings are based on documentary evidence. *See Anderson*, 470 U.S. at 573–75, 105 S.Ct. at 1511–12. Ankeny's contention that the matter was like a summary judgment is without merit; the appropriate standard of review for the bankruptcy court's findings of fact is "clearly erroneous."

### (b) The parties' contentions

Ankeny contends on appeal that under California law, he was not Meyer's employer at the time of the improper conduct, but that Meyer's employer was Willett's. In fact, Willett's has paid on Meyer's claim in its bankruptcy. Ankeny contends that the agreement was not a contract, but if it were, that he signed it as an agent of Willett's. Even if the agreement were a personal contract, he contends that it was irrelevant because it did not show that Ankeny was the employer at the time of the harassment incidents. Furthermore, there cannot be two employers simultaneously liable under the California statutes, Ankeny contends.

Meyer's assertions present alternative theories to support the finding of the bankruptcy court that Ankeny is liable: 1) Ankeny had a personal employment contract with Meyer; 2) Ankeny was the alter ego of the corporation.

**(c) The agreement**

California's parol evidence rule states, in pertinent part:

(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

(b) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement.

. . . .

(g) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates ... or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement....

Cal.Civ.Proc.Code § 1856 (West 1995).

■ Under California law, extrinsic evidence is always relevant to help explain what a contract means, but not to vary the written terms. In other words, if one side claims that the parties intended one thing but the agreement provides for another, the court must consider evidence of possible ambiguity. *Trident Center v. Conn. Gen. Life Ins. Co.,* 847 F.2d 564, 568–70 (9th Cir.1988); *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 69 Cal.Rptr. 561, 565–66, 442 P.2d 641, 645–46 (1968).

■ Ambiguity is a question of law (see, e.g., *Schmidt v. Macco Const. Co.,* 119 Cal.App.2d 717, 260 P.2d 230, 238 (1953)). Any uncertainty is construed against the drafter. Cal.Civ.Code § 1654 (West 1995); *InterPetrol Bermuda Ltd. v. Kaiser Aluminum Int'l Corp.,* 719 F.2d 992, 998 (9th Cir. 1983). Even if a contract is integrated, parol evidence may be admitted to aid in interpretation of ambiguities. Cal.Civ.Proc.Code § 1856(g) (West 1995). The parol evidence rule presupposes that there is a valid and binding contract in force. *Halldin v. Usher,* 49 Cal.2d 749, 321 P.2d 746, 748 (1958). Parol evidence is always competent to show the nonexistence of a contract. *Id.*

*1. The Agreement as an Integrated Contract*

The bankruptcy court found that the agreement was a personal contract between Ankeny and Meyer. Ankeny contends that it was not an integrated contract based on Meyer's allegedly contradictory testimony that he was employed by Willett's, as well as on Meyer's prebankruptcy cross-complaint which stated that Meyer was hired "pursuant to an agreement which was partly written, partly oral, and partly implied in fact."

■ Under California law, a written contract presumptively supersedes all prior or contemporaneous oral agreements concerning the subject matter of the written contract. Cal.Civ.Code § 1625; Cal.Civ. Proc.Code 1856(a) (West 1995). Parol evidence may be admitted to establish the terms of the complete agreement between the parties if the written contract is not the complete and final embodiment of that agreement. *Sullivan v. Mass. Mut. Life Ins. Co.,* 611 F.2d 261, 264 (9th Cir.1979).

■ Whether a contract is integrated is a question of law.[5] *Id.; Jenkins v. Eastern Capital Corp.,* 846 F.Supp. 864, 871 (N.D.Cal.1994). If a contract is not integrated, the parol evidence rule does not apply and the court can admit all evidence relevant to the parties' intent, including negotiations and prior agreements. *A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Div.,* 852 F.2d 493, 495 (9th Cir. 1988). "The crucial issue in determining whether there has been an integration is whether the parties intended their writings to serve as the exclusive embodiment of their agreement." *Masterson v. Sine,* 68 Cal.2d 222, 65 Cal.Rptr. 545, 547, 436 P.2d 561, 563 (1968). In determining whether the contract is integrated, the court should consider: (1) whether the written agreement appears to

**5.** Some California courts have held that the standard of review for whether a contract is fully integrated is the substantial evidence standard.

See explanation in *Esbensen v. Userware Int'l, Inc.,* 11 Cal.App.4th 631, 14 Cal.Rptr.2d 93, 97 n. 4 (1992).

state a complete agreement; (2) whether the alleged oral agreement directly contradicts the writing; (3) whether the oral agreement might naturally be made as a separate agreement; and (4) whether a jury might be misled by the introduction of the offered parol evidence. *Sullivan*, 611 F.2d at 264.

■ If a letter of intent is merely an agreement to agree, it is not enforceable as a contract. *Store Properties v. Neal*, 72 Cal. App.2d 112, 164 P.2d 38, 40 (1945). "Where a contract appears to be a preliminary agreement 'embodying only the spirit of a contemplated supplementary contract ... and it is perfectly clear ... that the minds of the parties never met upon the details,' then it is not enforcible [sic]." *Id.* (quoting *Stanton v. Singleton*, 126 Cal. 657, 59 P. 146, 148 (1899)).

■ If the parties so intended, a letter of intent constitutes a binding contract. *Cal. Food Serv. Corp. v. Great American Ins. Co.*, 130 Cal.App.3d 892, 182 Cal.Rptr. 67, 70 (1982). The parties' expectations may be inferred from the conduct of the parties and the surrounding circumstances. *Id.* "In looking at the instrument as a whole, if the parties agreed to the essential terms in writing, there is an enforceable contract between them even if they may have contemplated that a more formal agreement would be signed later." *In re Storage Tech. Corp.*, 53 B.R. 471, 477 (Bankr.D.Colo.1985) (interpreting California law).

■ On its face, neither the title of the agreement nor its contents indicated that a final contract or other formal agreement would be forthcoming. In fact, no formal employment contract was entered into subsequent to this agreement, nor was evidence presented of additional oral terms that contradicted this agreement. The agreement set forth detailed terms of employment, including job duties, supervisory protocol, job salary and benefits, the probationary period, and termination provisions. It contained the necessary basic information as to the parties and purpose of the agreement, and was signed by the parties. In looking at the instrument as a whole, the parties agreed to the essential terms in writing. The evidence shows that the parties intended the letter of intent to constitute an integration of the terms contained therein. Therefore, the bankruptcy court did not err in concluding that the letter of intent was a binding contract.

### 2. Ankeny as Party to the Contract

Ankeny contends that all the evidence shows that both parties knew that the contract was between Willett's and Meyer and that he signed the agreement as an agent of Willett's. He argues that the contract was, therefore, ambiguous. Ankeny contends that the reference to "Mr. and Mrs. Ankeny d.b.a. Willett's Brewing Company" in the agreement meant something other than what it stated.

Meyer contends that the plain language of the contract showed that Ankeny entered into it as an individual.

■ If possible, the intent of the parties is to be ascertained from the writing alone. Cal.Civ.Code § 1639 (West 1995). Ankeny's theory, however, raises an uncertainty concerning the issue of intent for which extrinsic evidence may be examined. *Trident*, 847 F.2d at 565.

■ Whether Ankeny intended to sign the contract on behalf of the corporation is a question of fact. *Estreito*, 111 B.R. at 295; *In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557, 579 (Bankr.N.D.Cal.1994). "[T]he relation of the parties to a written contract of employment is *prima facie* that which is expressed by the terms of their writing." *Gipson v. Davis Realty Co.*, 215 Cal.App.2d 190, 30 Cal.Rptr. 253, 260 (1963). Extrinsic evidence is admissible to prove facts concerning the execution of the document, but which do not vary the document's terms. *San Joaquin Valley Bank v. Gate City Oil Co.*, 170 Cal. 250, 149 P. 557, 558–59 (1915).

Ankeny's declaration alleged the following facts: 1) Ankeny executed the agreement in his capacity as agent for Willett's, which was incorporated at that time; 2) Ankeny's wife was a shareholder in Willett's; 3) Meyer knew and understood that Willett's was his employer; 4) Willett's paid Meyer's salary;

and, 5) all business permits and licenses relating to the company were in Willett's name.

Meyer's declaration, on the other hand, alleged that "Mr. Ankeny was the individual who hired [him]" and that the contracting party was "Mr. Ankeny." It was undisputed that Ankeny was president and director of Willett's and had final authority over Meyer's employment. The agreement, Meyer alleged, identified Mr. Ankeny's capacity as "Mr. and Mrs. Ankeny, d.b.a. Willett's Brewing Company." Meyer's evidence further showed that Ankeny was unsure at which point his wife became a shareholder in Willett's.

A consideration of the extrinsic evidence does not render the contract ambiguous. Extrinsic evidence may not be used to show that words in the contract mean the exact opposite of their ordinary meaning. *ACL Technologies, Inc. v. Northbrook Property and Casualty Ins. Co.*, 17 Cal.App.4th 1773, 22 Cal.Rptr.2d 206, 217 (1993). The record supports the bankruptcy court's finding that the agreement was intended to be a personal employment contract between Ankeny and Meyer.

### (d) Ankeny as employer

■ The bankruptcy court's memorandum decision found that "[s]ince Meyer had a[n employment] contract with Ankeny personally and was working as an employee of the corporation, his claim shall be allowed as filed in both estates." This finding of fact is, essentially, that Ankeny and Willett's were dual or joint employers for purposes of the indemnification statute.

The statute provides that "[a]n employer shall indemnify his employee...." Cal.Labor Code § 2802 (West 1995).

Ankeny preliminarily contends that even if he did enter into an employment contract with Meyer, it is irrelevant because the contract does not prove that he was Meyer's employer at the time of the harassment incidents. We disagree. The agreement between Ankeny and Meyer contained a provision for terminating the employment. Obviously, the employment had not been terminated at the time of the harassment inci-

dents. Therefore, the terms of the agreement were still in force at the relevant times.

Ankeny further contends that the pertinent California statute does not contemplate two simultaneous employers.

Whether Ankeny and Willett's can both be Meyer's employer for purposes of liability under Cal.Labor Code § 2802 is a mixed question of law and fact, which we review *de novo. Nat'l Auto. & Casualty Ins. Co. v. Indus. Accident Comm'n*, 80 Cal.App.2d 769, 182 P.2d 634, 636 (1947) (facts are not in dispute and the commission's implied finding of sole employment is in reality a conclusion of law from the undisputed facts). The relevant facts on this issue are not in dispute.

The California Labor Code does not define "employer" but indicates that the words "employer" and "employee" are "newer terms which have replaced the common law "master" and "servant." 29 CAL.JUR.3D (REV.), Employer and Employee § 1, at 533–34 (1986); *B.P. Schulberg Productions v. Cal. Employment Comm'n*, 66 Cal.App.2d 831, 153 P.2d 404, 406 (1944).

■ Case law generally provides that an employer is one who has control and direction over the employee in regard to services performed. *Gipson*, 30 Cal.Rptr. at 262; *Villanazul v. City of Los Angeles*, 37 Cal.2d 718, 235 P.2d 16, 18 (1951); *Serv. Employees Int'l Union, Local 434 v. County of Los Angeles*, 225 Cal.App.3d 761, 275 Cal. Rptr. 508, 512–13 (1990) (construing employment relationship under Meyers–Milias–Brown Act, Cal.Gov.Code § 3500 et seq.). In addition to control and direction of the employee's activities, four additional factors pertinent in determining the existence of an employer-employee relationship are: (1) the power to discharge the employee; (2) the payment of salary; (3) the nature of the services; and (4) the parties' belief as to the existence of an employment relationship. *Id.*

California courts have recognized the concept of dual or joint employers, and have interpreted various code provisions as placing liability for one act or event upon two employers simultaneously. *See generally: Bonnette v. Cal. Health and Welfare Agency*, 414 F.Supp. 212, 214 (N.D.Cal.1976) (county

and state as well as In–Home Supportive Services Program recipients were joint employers of domestic workers for purposes of the Fair Labor Standards Act, Cal.Welfare & Inst.Code § 12300 et seq.); *Rivcom Corp. v. Agric. Labor Relations Bd.,* 34 Cal.3d 743, 195 Cal.Rptr. 651, 665, 670 P.2d 305, 319 (1983), *cert. den.* 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984) (construing the Agricultural Labor Relations Act, Cal.Labor Code § 1140 et seq.); *Dillard v. McKnight,* 34 Cal.2d 209, 209 P.2d 387, 390 (1949) (wrongful death action against joint employers); *Serv. Employees,* 275 Cal.Rptr. at 515; *United Public Employees, Local 790, SEIU, AFL–CIO v. Public Employment Relations Bd.,* 213 Cal.App.3d 1119, 262 Cal.Rptr. 158, 163 (1989) (community college district and city were joint employers under Educational Employment Relations Act, Cal.Gov.Code § 3540 et seq.); *In–Home Supportive Servs. v. Workers' Compensation Appeals Bd.,* 152 Cal.App.3d 720, 199 Cal.Rptr. 697, 704 (1984) (workers' compensation law provides for coverage based on dual employment relationship; Cal.Labor Code § 3300 et seq.).

■ Statutory construction requires that individual portions of a statute should be harmonized with each other, and the entire statute should be harmonized with the body of law of which it forms a part. *United Public Employees,* 262 Cal.Rptr. at 163; *see also Bowland v. Municipal Court for Santa Cruz County Judicial Dist. of Santa Cruz County,* 18 Cal.3d 479, 134 Cal.Rptr. 630, 634, 556 P.2d 1081, 1085 (1976). We hold that the concept of joint employers applies to liability under Cal.Labor Code § 2802.

■ Joint employment occurs when "two or more persons engage the services of an employee in an enterprise in which the employee is subject to the control of both." *In–Home Supportive Servs.,* 199 Cal.Rptr. at 704.

In the instant case, Ankeny does not dispute that Willett's was Meyer's employer. Willett's paid Meyer's salary and provided the method and means for his work. The evidence also shows that Ankeny provided direct supervision of Meyer, and through his contract with Meyer, controlled the scope and everyday aspects of Meyer's employ-

ment. We find that Ankeny and Willett's were joint employers of Meyer. Therefore, we hold that the bankruptcy court did not err by concluding that Meyer's indemnification claim was allowable in both the Ankeny and Willett's bankruptcies.

**(e) Alter-ego theory**

In Meyer's response to the objection to his claim, he alleged that Ankeny was Willett's alter ego.

■ Whether an entity or individual is an alter ego of the corporation is a factual determination, *Jack Farenbaugh & Son v. Belmont Const., Inc.,* 194 Cal.App.3d 1023, 240 Cal.Rptr. 78, 82 (1987), controlled by state law, *In re Christian & Porter Aluminum Co.,* 584 F.2d 326, 337–38 (9th Cir.1978). The California test has two elements: 1) that there be such unity of interest and ownership that the separate personalities no longer exist, and 2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow. *Pajaro Dunes,* 174 B.R. at 582.

Although this theory was raised as an alternative theory, the bankruptcy court did not make any findings pertinent to the above elements. Its finding that Ankeny had a personal contract with Meyer does not address the alter ego issue. Moreover, since we affirm on the basis of the dual employer finding, neither we nor the bankruptcy court need address this issue further.

**(f) Motion for reconsideration**

■ Ankeny also appeals the bankruptcy court's order denying his motion for reconsideration, pursuant to Fed.R.Bank.P. 9023. The grounds for granting such a motion are: 1) manifest error of law; 2) manifest error of fact; 3) newly discovered evidence. *Brown v. Wright,* 588 F.2d 708, 710 (9th Cir.1978).

Ankeny sets forth two errors: 1) the court failed to recognize that Meyer himself admitted that Willett's was his employer; and 2) the "sole ground" for the opposition was the alter-ego theory, which has no basis in law or fact. These allegations are incorrect.

The pleadings before the bankruptcy court showed that the issue of whether or not Ankeny was Meyer's employer was substantially argued in both parties' trial briefs. Any statements by Meyer that he was Willett's employee do not contradict his evidence that Ankeny personally entered into a contract with him and of the contract itself, because a valid legal theory of dual employment exists. Although Meyer's arguments below focused on the alter-ego theory, his allegation and supporting evidence was that 1) Ankeny as an individual entered into an employment contract with Meyer, and 2) Ankeny was the corporation's alter ego. Assuming, *arguendo,* that the two elements of Meyer's argument were directed toward the alter-ego theory, his argument was properly severed by the bankruptcy court.

The bankruptcy court did not abuse its discretion by denying Ankeny's motion for reconsideration.

### CONCLUSION

The bankruptcy court correctly concluded that the Letter of Intent constituted a contract between Ankeny, personally, and Meyer. The conclusion by the bankruptcy court that Ankeny's liability stemmed from his employment contract with Meyer was supported by the facts and California law, which recognizes a dual employer liability. Finally, Ankeny did not present any grounds to amend or vacate the order overruling his objection. Thus the bankruptcy court did not abuse its discretion by denying his motion for reconsideration. Both orders are **AFFIRMED.**