Filed 9/20/13  Pak v. Asaf CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ABDOLAHAD PAK, | B245078 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC454381) |
| v. | |
| JAMSHID J. ASAF, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rita Miller, Judge.  Affirmed.

Thomas Law Company and Jeffrey G. Thomas for Plaintiff and Appellant.

Law Offices of Mark Henry Shafron and Mark Henry Sharon for Defendant and Respondent.

_____

Plaintiff and appellant Abdolahad Pak appeals from the trial court's judgment in favor of defendant and respondent Jamshid J. Asaf in this action for breach of contract with respect to a loan agreement made in 2009 and common counts of money lent and money had and received after February 2, 2009.[1]  Pak contends the trial court erred in failing to rule on his "speaking" motion to amend the complaint to include the issue of Asaf's liability under a loan agreement executed in 2008 and presents several challenges to the trial court's findings with respect to the agreement in 2008 (2008 Agreement).  He also contests the trial court's finding that Ednaco, a codefendant in the suit, did not function as Asaf's alter ego.

We affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

### *Events Precipitating the Lawsuit*

As we will discuss below, the complaint only refers to the 2009 Agreement, and no proper oral motion was made to amend it to include breach of an earlier agreement, nor was breach of an earlier agreement tried by consent.  We include details of the earlier agreements to the extent that they evidence the parties' prior dealings and therefore aid in determining whether the 2009 Agreement was enforceable.

Pak and Asaf are immigrants from Iran.  They first met through Pak's brother, a long-time friend of Asaf from dental school in Iran.  Asaf started a dental practice in the United States, Encino Smile Center, Inc., and Pak sought to work for him as a dental technician.  Asaf did not hire Pak, but they continued to see one another about once a month.  Pak was in need of a job.  Asaf suggested to Pak that if he loaned money to Ednaco, a dried fruit and nut company, Asaf could get Pak a 10 percent return on his

---

[1]  Although the loan agreement was made in December 2009, it was executed in 2010.  Because the parties and trial court refer to it as the "2009 Agreement," we will refer to it as such throughout the opinion.

investment. Ednaco was owned by Edna Davidi, a dental patient and friend of Asaf's. Davidi and Asaf lived in the same community and attended the same synagogue. Davidi's son had helped Asaf's son and daughter, and as a result, Asaf was very grateful to the family. Asaf testified that he occasionally worked on a volunteer basis to help Davidi, but that his only financial interest in Ednaco was as a creditor, who had lent money to the company. Pak testified Asaf represented himself as having an ownership interest in Ednaco and had stated, "I own Ednaco," and "I am Ednaco." Pak presented other witnesses who testified Asaf solicited loans for Ednaco, Davidi referred to Asaf as her partner, and between eight months to a year in 2009, Asaf went to Ednaco once a week and spent approximately half a day assisting with paperwork.

On or about November 16, or 20, 2005, Pak loaned $120,000. Pak presented a note written by Asaf on a prescription pad as a memorialization of the transaction: "OK to pay monthly of $500 interest for $60,000 by check."[2] Both Pak and Asaf signed below these words. Pak issued a check dated November 29, 2005, payable to Ednaco in the amount of $60,000, which he gave to Asaf. Ednaco negotiated the check and deposited it into its own account. On November 30, 2005, Pak prepared a typewritten document in English, titled "The Agreements," which provided in relevant part: "This agreement is between Abdolahad Pak (as Lender) and Dr. James Asaf and Ednaco (as Borrowers). Mr. Abdolahad Pak lends one check to the amount of $60,000 on 12/1-05 to Dr. James Asaf and every month take $500 as interest, and he cancel the agreement at any time with 30 days notice before take the money back. Borrowers have commitment to pay 12 check to the amount of each $5000.00. Dr. James Asaf gives a 2nd check as collateral to the amount of $60,000." On December 5, 2005, Pak issued a second check payable to Ednaco in the amount of $60,000, which he gave to Asaf. Again, Ednaco negotiated the check and deposited it in its own account. At some point, Asaf gave Pak two checks written on his and his wife's personal checking account, made out to Pak, for $60,000 each. One of the checks was dated November 20, 2005. The parties do not dispute that

---

[2] The writing was in Farsi, but the parties do not contest this translation.

the checks were held by Pak as collateral for the $120,000 in loans he made in November and December of 2005. Pak does not contest that all payments required under the agreement were made up until August of 2008, when the parties made a new agreement.

On or about August 18, 2008, the parties orally agreed to a loan of an additional $149,000 by Pak. The principal ($101,000) and interest were still remaining on the 2005 loans, such that the total indebtedness was $250,000. On August 18, 2008, Pak obtained three cashier's checks from his Bank of America account, which were made out to him and totaled $149,000. The checks were deposited into Ednaco's account. Pak testified there was a supplementary oral agreement made around the same time providing the loan would bear monthly interest of 10 percent, and payments of interest would be made at the same time the principle payments were due. Pak also testified that the first payment of interest, due on September 18, 2008, was never made.

Sometime in late 2008, Pak prepared documents, entitled "Promissory Note" and "Guaranty," with the help of a Spanish-speaking paralegal, whom he found on the internet, intended to memorialize the August 2008 loan. The Promissory Note provided that Pak would lend Ednaco $250,000 to be repaid in 12 monthly installments of $20,837.00 on the 18th of each month, beginning December 18, 2008. Ednaco was to open a joint bank account with Pak, into which all of Ednaco's profits were to be deposited. Pursuant to the agreement, Ednaco would employ Pak and pay him a salary of $2,500 per month for the duration of the loan. Pak was to be given priority over all other creditors. As security, Asaf was to provide paintings valued at $250,000. The Promissory Note was two pages long. Signature and date lines were provided for Ednaco by Davidi and for Pak. Pak signed the Promissory Note above his typewritten name but did not date his signature. Ednaco did not sign the Promissory Note. Asaf initialed the first and second pages of the Promissory Note. He signed the second page below Pak and outside of the typewritten signature area. The Guaranty provided that: "In consideration of any financial accommodations given or to be given or continued by Kourosh Pak ('Secured Party') to Ednaco Distribution, Inc. ('Debtor') *under the above-referenced Promissory Note*, the undersigned hereby guarantees the due and prompt payment of all

4

indebtedness, obligations, or performance of Debtor to Secured Party." (Emphasis added.) Signature and date lines were provided for Edna Davidi; the "Encino Smile Center (or), by Jamshid a/k/a James Asaf[;] and Jamshid a/k/a James Asaf." The Guaranty was signed by Asaf, in his individual capacity only, and dated December 23, 2008. Pursuant to the Guaranty, Asaf gave Pak checks written on his joint checking account with his wife and on his dental office account as security for the Promissory Note. Asaf also left paintings on deposit in a warehouse near Ednaco.

Ednaco failed to make timely payments pursuant to the Promissory Note. Ednaco did not timely make the January 18, 2009 principle or interest payments, nor did it timely make payments in several months after that. Ednaco also failed to pay Pak the promised $2,500 per month salary. He was paid considerably less ($1,600), and some payments were missed entirely. Asaf often made payments to Pak in cash or in checks drawn on his personal account with his wife or the Encino Smile Center. Asaf never signed checks for Ednaco.

In December 2009, Pak prepared another Promissory Note and Guaranty, using the same Spanish-speaking paralegal. The documents used the 2008 Promissory Note and Guaranty as templates. The Promissory Note provided Pak would lend Asaf $250,000 to be repaid in 13 monthly installments of $20,000 on the 18th of each month, beginning January 18, 2010. Asaf was to open a joint bank account with Pak, into which all of Asaf's profits were to be deposited. Pursuant to the agreement, Asaf would employ Pak and pay him a salary of $2,500 per month for the duration of the loan. Pak was to be given priority over all other creditors. The Promissory Note was two pages long. Signature and date lines were provided for Dr. James Asaf & Ednaco Distribution, Inc. (Debtor) by Dr. James Asaf and for Pak (Creditor). Asaf initialed page 1 of the Promissory Note in the right-hand margin and initialed page 2 next to the word creditor, which was located in approximately the same place he initialed on page 1. Pak did not sign the Promissory Note. The Guaranty provided that: "In consideration of any financial accommodations given or to be given or continued by Kourosh Pak ('Secured Party'), to Encino Smile Center, Inc. ('Debtor') *under the above-referenced Promissory*

5

*Note*, the undersigned hereby guarantee the due and prompt payment of all indebtedness, obligations, or performance of Debtor to Secured Party." (Emphasis added.) Signature and date lines were provided for the "Encino Smile Center by Jamshid a/k/a James Asaf and Jamshid a/k/a James Asaf." The Guaranty was signed by Asaf, in his individual capacity and as Encino Smile Center, and dated January 18, 2010. Asaf never made a payment under the 2009 note.

The parties disagree as to the nature of the 2009 Agreement. Pak claims the 2009 Agreement was a renewal of the 2008 Agreement, intended to shift the indebtedness from Ednaco to Asaf, and change the terms of repayment. Asaf alleges the loan was a new loan for $250,000 to him, to be used for expansion of his dental practice, and possibly for him to lend money to Ednaco. The parties agree Pak did not lend any additional monies pursuant to the 2009 Agreement. Asaf continued to make payments to Pak after the 2009 Agreement was signed. Pak argued the payments were made pursuant to the renewal agreement. Asaf insisted they were payments due under the 2008 Agreement.

In the spring of 2010, Pak's employment with Ednaco was terminated. In November of 2011, Pak demanded the balance of the loan be repaid to him.


*The Lawsuit*


Pak filed the operative complaint against Ednaco, Davidi, and Asaf on February 2, 2011, alleging breach of the 2009 Agreement and common counts of money lent and money had and received after February 2, 2009. Asaf cross-complained for indemnity and apportionment of fault as to codefendants, and for usury as to Pak.

The case proceeded to a bench trial. Davidi declared bankruptcy and was dismissed from the action. Ednaco defaulted, and the trial served as a default prove-up as to it. Asaf's usury counterclaim was dismissed prior to the end of trial, at the urging of the trial court that it ran counter to Asaf's overall position that no additional money had been loaned.

6

The trial court issued its decision in favor of Asaf and Ednaco on May 30, 2012, finding Pak failed to establish his claims by a preponderance of the evidence. The cross-claims for indemnity and apportionment of fault were rendered moot by the judgment.

The trial court found Pak failed to establish Asaf had an alter ego relationship with either Ednaco or Davidi, and that any obligation of Asaf under the 2009 Agreement was in an individual capacity. The court emphasized the only note sued upon was the 2009 Agreement but discussed and made findings with respect to the previous agreements, because their consideration was necessary in determining the nature of the 2009 Agreement. The court found the August 2008 oral agreements had been breached on September 18, 2008, because Pak testified that the principle and interest payments due on that date were never made. The two-year statute of limitations for oral agreements had therefore run before the complaint was filed on February 2, 2011. With respect to the December 2008 Promissory Note, the court determined that Ednaco, and not Asaf, was the debtor, and because Ednaco had not signed the Promissory Note, Asaf was not bound by the Guaranty, which was limited to debt "under the above-referenced Promissory Note," although Asaf believed he was bound and had acted accordingly.

The trial court then ruled Pak failed to establish the 2009 Agreement was a renewal of the 2008 Agreement by a preponderance of the evidence. The court found that:  1)  the Promissory Note did not purport to be a renewal on its face; 2)  it was unlikely Pak would abandon a ripe claim against Ednaco and create a new document addressing Ednaco's debt when it was in breach and had a poor payment history; 3)  it was unlikely Asaf would willingly shoulder the full responsibility of the debt when the money had gone solely to Ednaco; and 4)  it was likely Pak would prefer to lend money to Asaf, a successful dentist with his own practice, rather than Ednaco, a struggling fruit and nut company. The court could not conclude under the circumstances the 2009 Agreement was more likely than not a renewal of the 2008 Agreement, rather than a note predicated on a loan of money that was to occur in the future and was never made.

Finally, the trial court found in favor of Asaf on the common counts for money lent and money had and received. The common counts were based on the 2009

7

Agreement, and Pak conceded that neither Ednaco nor Asaf received additional monies pursuant to the note. Moreover, the court noted that even if the common counts had been based on the 2008 Agreement, the two-year statute of limitations would have run on the common counts. The court emphasized the rulings in the matter were based primarily on the burden of proof, and to the extent the testimony conflicted, the court found Asaf to be the more credible witness.

**DISCUSSION**

*Amendment of the Complaint*

Although he concedes the 2009 Agreement was the only agreement sued upon in the complaint, Pak contends the trial court abused its discretion in failing to rule on his "speaking" motion to amend the complaint to include breach of the 2008 Agreement. This contention fails because Pak's counsel made no such motion. Although courts must be liberal in granting a request to amend a complaint, the movant is required to clearly "indicate the nature of the proposed amendment or the manner in which he would amend his complaint. (*See Schultz v. Steinberg* (1960) 182 Cal.App.2d 134, 140-141.)" (*Tiffany v. Sierra Sands Unified School Dist*. (1980) 103 Cal.App.3d 218, 226 (*Tiffany*).) Here, the only amendment Pak's counsel specifically requested was an amendment correcting the previous statement in the complaint that interest on the 2009 Agreement was current through September of 2010, after evidence offered at trial indicated those payments were not current. The portion of the record Pak points to in support of his position shows only that he wished to amend to seek unpaid interest accrued before September 2010, not that he wished to include breach of the 2008 Agreement:

"The Court: So I'm going to read paragraph 12 [of the complaint] with [the December 18, 2009 promissory note] in mind. [¶] 'Concurrent with the execution of the note,' and that would be on December 18, 2009, 'defendants verbally promised and agreed to pay plaintiff interest in the unpaid principal balance due under the note at a rate

8

of 10 percent per anum.' Defendants in fact paid $2100 per month as interest on the note for nine months from January 2010 until September 2010. Okay. So I think you're trying to point out to me that the complaint says they were current.

"[Defendant's counsel]: Through September.

"The Court: And that [Pak's] testimony is now that they were not. [¶] All right. So the question is, and it's really a question for [plaintiff's] counsel, are you asking to amend the complaint to seek interest before September 2010?

"[Plaintiff's counsel]: Yes, Your Honor. We would move to conform to proof and request interest before that date per exhibit 23 is the chart that was made up by plaintiff and myself based upon receipts we got from the defense in discovery that showed that the interest really wasn't current."

There can be no prejudice in the trial court's failure to rule on a motion to amend to include breach of the 2008 Agreement where that particular issue was never addressed in the motion. (See *Tiffany*, *supra*, 103 Cal.App.3d at p. 226.) Accordingly, Pak was not prejudiced here. [3]

We are likewise not persuaded that the issue was tried by consent. Pak argues the following exchange during opening arguments supports his position:

"[Pak's counsel]: So essentially at this time what we're suing on is the 2009 promissory note, the renewal of the earlier ones. We're also asking for recovery of the principal amount, interest, legal fees and court costs. [¶] The defense will argue that this was not a primary undertaking by Dr. Asaf, that yes, he agrees that $250,000 was loaned, but he will testify that the renewed note was for a completely new advance, 250,000 fresh dollars, and in his testimony he will say that loan was never made which we agree with.

---

[3] Pak also points to Asaf's counsel's failure to establish prejudice with respect to the amendment to include the pre-September 2010 interest as evidence that the issue of the 2008 breach was tried by consent. The two are separate issues. Failure to establish prejudice as to the pre-September 2010 interest cannot serve as proof of trial by consent of whether there was a breach of the 2008 Agreement.

So fulcrum on that plaintiff will testify no, no, no, that was a rollover of the previous obligation. There was no new loan to be made.

"The Court: If it was a rollover of the previous obligation, then you would be suing on the 2008 note instead of the 2009 note, wouldn't you?

"[Pak's counsel]: We could, but the 2009 note replaced the 2008 note. Once –

"The Court: But if the 2009 note didn't replace the 2008 note then you would be suing on the 2008 note?

"[Pak's counsel]: Agreed. Very astute. I hadn't thought of that. We would be.

"The Court: Would it make any difference? Would it make any difference if you were suing on the 2008 or 2009 note?

"[Pak's counsel]: It wouldn't matter. . . . [¶] I think essentially that's our position."

This discussion may have initially clarified for Pak's counsel that if the 2009 note did not replace the 2008 note, Pak would have to sue on the 2008 note to recover any unpaid monies under that earlier obligation, but ultimately, counsel concluded it was irrelevant which note Pak sued upon and never moved to amend the complaint to refer to the 2008 Agreement.

In trying the issue of whether the 2009 Agreement was a replacement of the 2008 Agreement of the 2008 note, the parties necessarily presented evidence pertaining to the 2008 Agreement, including Asaf's admission money had been lent under that agreement. This alone is not enough to support the conclusion that the issue of whether the 2008 Agreement was breached was tried by consent, however. Breach of the 2009 Agreement and breach of the 2008 Agreement are separate issues, and "'"evidence which is relevant to an issue actually raised by the pleadings cannot be considered as authorizing the determination of an issue not presented." [Citation.]' [Citations.]" (*Lein v. Parkin* (1957) 49 Cal.2d 397, 401 (*Lein*).)

Moreover, Asaf did not consent to trying the issue. In his counsel's opening argument, which followed Pak's, counsel reiterated that the only contract sued upon in the pleadings was the 2009 contract:

10

"The Court: . . . you said that plaintiff has two causes of action: breach of contract and common counts.

"[Asaf's counsel]: Common counts is two counts of one cause of action.

"The Court: You're off on apples [and oranges] again. I'm trying to ask you about oranges and the breach of contract claim is for the 2009 contract as opposed to the 2008 contract.

"[Asaf's counsel]: Correct. . . . The 2009 contract doesn't mention Ednaco. It talks about a loan to Dr. Asaf. . . ."

Pak's counsel neither objected nor corrected Asaf's counsel, nor moved to amend following this exchange. Asaf's counsel reiterated the 2009 contract was the only contract sued upon in his closing arguments, specifically stating that no amendment had been made, and again, Pak's counsel made no response of any kind. "'[I]t is settled law that where the parties and the court proceed throughout the trial upon a theory that a certain issue is presented for adjudication, both parties are thereafter estopped from claiming that no such issue was in controversy even though it was not actually raised by the pleadings. [Citations.] But such principle of estoppel operates only where it appears "from the record on appeal . . . that the issue was actually and intentionally tried by the introduction of pertinent evidence, and that the party against whom the estoppel is invoked consciously participated or acquiesced in such trial as if the issue had been made by the pleadings. . . ." [Citations.]'" (*Lein*, *supra*, 49 Cal.2d at pp. 400-401.) It is clear from the proceedings that Asaf did not consent to trying the issue of whether the 2008 Agreement was breached and correctly believed no request to amend the pleadings had been made in the course of trial.

Finally, Pak argues that Asaf must be bound by the arguments in his cross-complaint for usurious interest, which Pak asserts "must be construed as judicial admissions" of Pak's loan to him in 2009. The cross-complaint referred only to the 2009 Agreement and monies allegedly lent after February 2, 2009, and has no relevance to the issue of whether the 2008 Agreement was breached. However, if we were to conclude that Asaf was bound to statements made in the cross-complaint, those admissions would

11

be binding on Pak as well, completely undercutting Pak's argument that the 2009 Agreement served only as a renewal of the 2008 Agreement. (See *Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 452 ["A judicial admission is . . . conclusive both as to the admitting party *and as to that party's opponent*. [Citation.] Thus, if a factual allegation is treated as a judicial admission, then neither party may attempt to contradict it—the admitted fact is effectively conceded *by both sides*."].)

Pak's argument would fail regardless, because he was not prejudiced by Asaf's delay in moving to dismiss the cross-complaint. From the very start of trial, Pak was aware that Asaf's case rested upon the theory that no money was lent pursuant to the 2009 Agreement, as Pak's counsel stated himself in opening argument: "[Dr. Asaf] will testify that the renewed note was for a completely new advance, 250,000 fresh dollars, and in his testimony he will say that loan was never made which we agree with." Both parties knew that this was Asaf's version of the facts and agreed that it was true no money had been lent. Any assertion to the contrary is disingenuous at best. Ultimately, the cross-complaint was dismissed, without any argument from Pak's counsel that relief from the purported "judicial admissions" would prejudice Pak. There are simply no admissions of payment in 2009 to which Asaf must be bound.

### Enforceability of the 2009 Agreement

We turn to the question of liability under the 2009 Agreement and/or for monies lent after February 2, 2009. In doing so, we first resolve the question of alter ego liability.

"Generally speaking, there are two requirements for disregarding the corporate entity: '. . . (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.' [Citation.] [¶] Since the determination as to whether or not these requirements have been established by the evidence is primarily one for the trial court and is not a question of

12

law, the conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence. [Citations.]" (*Jack Farenbaugh & Son v. Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1032-1033.)

Here, substantial evidence supports the trial court's finding that Ednaco did not function as Asaf's alter ego. Pak offered no evidence as to Ednaco's form. His only bases for believing that Asaf had an ownership stake in Ednaco were Asaf's purported statements that he "owned" or "was" Ednaco, and his work at Ednaco half a day once a week for periods in 2009. Asaf guaranteed Ednaco's debt to Pak in 2008, and Asaf often paid Pak in cash or with checks drawn from his own account or the Encino Smile Center account, which would be in keeping with his role as guarantor. Asaf never signed a check on behalf of Ednaco, however, and explained that he helped with paperwork there as a favor to Davidi, who had helped his own family substantially. Pak showed no evidence that Asaf ever personally benefitted from the loans made to Ednaco, nor did he show any commingling of the monies loaned. Pak himself clearly recognized Asaf as separate from Ednaco, otherwise there would have been no point in changing the names of the borrowers on the several loan agreements between the parties. Thus, Asaf's liability can only be based on his liability as an individual.

We next look to the contract itself, applying fundamental principles of contract interpretation, """[which] are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) . . .'"" [Citation.]" (*TRB Investments, Inc. v. Fireman's Fund Ins. Co*. (2006) 40 Cal.4th 19, 27.) "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912.)

"When a dispute arises over the meaning of contract language, the court must decide whether the language is 'reasonably susceptible' to the interpretations urged by the parties.  [Citation.]  '". . . Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself [citation] or from extrinsic evidence of the parties' intent [citation].'"  [Citations.]"  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 798.)  "'If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?  [Citation.] . . .'  [Citation.]"  (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448.)

"The trial court's ruling on the threshold determination of 'ambiguity' (i.e., whether the proffered evidence is relevant to prove a meaning to which the language is reasonably susceptible) is a question of law, not of fact.  (*Madison v. Superior Court* (1988) 203 Cal.App.3d 589, 598.)  Thus the threshold determination of ambiguity is subject to independent review.  (*Equitable Life Assurance Society v. Berry* (1989) 212 Cal.App.3d 832, 840.)"  (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 (*Winet*); see also *ASP Properties Group, L.P. v. Fard, Inc*. (2005) 133 Cal.App.4th 1257, 1266-1267.)  "When the competent parol evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction [by the trial court] will be upheld as long as it is supported by substantial evidence.  (*Stratton v. First Nat. Life Ins. Co*. (1989) 210 Cal.App.3d 1071, 1084.)"  (*Winet, supra,* at p. 1166.)

Here, the language of the 2009 Agreement is unambiguous:  Pak was to loan $250,000 to Asaf, to be guaranteed by the Encino Smile Center.  The contract appears to stand alone.  There is no mention of the 2008 Agreement or any other previous debt and no mention of renewal.  Ednaco is not a borrower on the note.  There is nothing in the 2009 Agreement that would lead a reasonable person to believe that it was intended as a renewal.

Looking to extrinsic factors, we conclude the trial court's finding that Pak failed to meet his burden by a preponderance of the evidence is supported by substantial evidence.  Given the agreements were drafted by laypersons and non-native English speakers, it is

*possible* that either interpretation was intended despite lack of any reference to the 2008 Agreement, but, as the trial court elucidated in its opinion, Asaf's interpretation of the 2009 Agreement is the more rational one. No evidence was presented that Asaf received any of the monies loaned pursuant to the 2008 Agreement, so it seems illogical that he would willingly take over full responsibility for repayment of the loan. In fact, in the parties' prior course of dealing, the opposite had occurred. Both Asaf and Ednaco had been listed as borrowers on the 2005 note, but when the amount due and owing was rolled into the new 2008 Agreement and additional monies were loaned, Ednaco, who received all of the monies, was listed as the sole borrower on the new note. It would not make sense for Asaf to willingly shift the burden of that loan back to himself while Ednaco was still failing to make timely payments. Moreover, it is unlikely that Pak would have renewed the agreement with Ednaco, which had a poor payment history, rather than pursuing a ripe claim against the company. It makes much more sense that Pak would instead loan money to Asaf, who had paid Ednaco's monthly installments, and was backed by the Encino Smile Center, his own successful dental practice.

Consideration of the contract language and the extrinsic factors together tips the scale in favor of Asaf's interpretation, if any. We conclude the trial court's reasonable construction of the 2009 Agreement is supported by substantial evidence. The court's ruling on the common counts is also supported. The parties agree that no monies were lent within the two years prior to the filing of the complaint, so Asaf could not have breached the agreement by failing to make payments.

## DISPOSITION

We affirm the judgment.  Costs on appeal are awarded to Jamshid Asaf.


       KRIEGLER, J.


We concur:


       TURNER, P. J.


       KUMAR, J.[*]

---

[*]    Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.